**SO ORDERED.**

**SIGNED this 24 day of January, 2013.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | |
| CAPE FEAR BANK CORP., | CASE NO. 09-05179-8-JRL |
| Debtor. | CHAPTER 11 |
| | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF CAPE FEAR BANK, | |
| Plaintiff and Counterclaim Defendant, | ADVERSARY PROCEEDING NO. 12-00261-8-JRL |
| v. | |
| GERALD A. JEUTTER, JR., AS PLAN TRUSTEE UNDER FIRST AMENDED PLAN OF LIQUIDATION OF CAPE FEAR BANK CORPORATION, | |
| Defendant and Counterclaim Plaintiff. | |

### ORDER

This matter comes before the court on the motion of the Federal Deposit Insurance Corporation, as receiver ("FDIC-R") of Cape Fear Bank (the "bank"), to dismiss counterclaims asserted by Gerald A. Jeutter, Jr., as plan trustee (the "trustee") of Cape Fear Bank Corporation

("debtor").[1]  A hearing was held on the matter on January 15, 2013, in Raleigh, North Carolina.  At the hearing, the court only heard argument related to the dismissal of count two of the trustee's counterclaims, which alleged that the FDIC-R violated the automatic stay when it filed a declaratory action in the United States District Court for the Eastern District of North Carolina.

## **PROCEDURAL HISTORY**

On April 10, 2009, Cape Fear Bank was closed by the North Carolina Commissioner of Banks and the Federal Deposit Insurance Corporation was named as receiver.  The debtor, a holding company that owns all the stock of the bank, filed a voluntary petition under chapter 11 of the Bankruptcy Code on June 23, 2009.  Before the FDIC-R was appointed, the debtor and the bank executed a tax sharing agreement, which provided that the debtor would prepare and file a consolidated federal income tax return on an annual basis.  Prior to filing the petition, the debtor filed such consolidated tax returns on behalf of the debtor and the bank.  The Internal Revenue Service paid a 2008 federal tax refund to the debtor in the amount of $177,567.00. The FDIC-R repudiated the tax sharing agreement on April 15, 2009.

The debtor submitted its first amended chapter 11 plan on October 22, 2009, to which the FDIC-R objected, as the plan did not provide for treatment of the FDIC-R's claim to the tax refunds paid to the debtor.  A confirmation hearing was held on December 17, 2009, and an order confirming the plan, subject to modifications resolving the objection of the FDIC-R, was entered on December

---

[1]As will be detailed below, the complaint filed by the FDIC-R, the trustee's counterclaims, and the FDIC-R's motion to dismiss trustee's counterclaims were originally filed in the United States District Court for the Eastern District of North Carolina.  On September 20, 2012, the district court entered an order granting the defendant-trustee's motion to refer the action to the bankruptcy court. FDIC v. Jeutter, No. 7:11-CV-130-H (E.D.N.C. Sept. 20, 2012). The FDIC-R's motion to dismiss trustee's counterclaims was pending at the time of the referral and the district court directed the bankruptcy court to consider the motion. Id. at 15.

21, 2009. The plan provides that the debtor shall continue to hold the proceeds of tax refunds from the IRS in escrow pending the bankruptcy court's resolution of the ownership of the refunds. In the event that the debtor or the FDIC-R receive any additional refunds from any taxing authorities, such refunds shall be held in escrow accounts pending the court's resolution of the ownership of the funds.

On September 10, 2010, the debtor submitted a claim for refund to the IRS in the amount of $2,651,891.00. The IRS subsequently issued the refund and the refunds were placed in escrow. The FDIC-R notified the trustee of its claim to the tax refunds and demanded that the refunds be transferred to the FDIC-R. The trustee declined to transfer the refunds and on June 22, 2011, the FDIC-R filed an action in the United States District Court for the Eastern District of North Carolina seeking a declaration of ownership of the refunds and an order requiring the trustee to turnover the refunds.

The trustee answered the FDIC-R's complaint and asserted counterclaims, including a claim that the FDIC-R violated the automatic stay when it filed the action in the district court. The FDIC-R moved to dismiss the counterclaims asserted by the trustee. The FDIC-R sought dismissal of the counterclaim alleging a violation of the automatic stay on the grounds that the counterclaim failed to state a claim upon which relief could be granted. Prior to resolution of the motion to dismiss, the district court granted the trustee's motion to refer the matter to the bankruptcy court. FDIC v. Jeutter, No. 7:11-CV-130-H (E.D.N.C. Sept. 20, 2012). In its referral order, the district court directed the bankruptcy court to consider motions pending at the time of referral.

## STANDARD OF REVIEW

A pleading which states a claim for relief must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A statement showing entitlement to relief under Rule 8(a)(2) must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007).  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  In order to survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265 (1986)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" in order to survive a 12(b)(6) motion.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

> Thus, under the first prong of a Rule 8(a)(2) analysis, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." If the court finds well-pleaded factual allegations in the complaint, the court "should assume their veracity" and proceed to determine "whether they *plausibly* give rise to an entitlement to relief."

Angell v. BER Care, Inc. (In re Caremerica, Inc.), 409 B.R. 737, 747 (Bankr. E.D.N.C. 2009) (citing Iqbal, 556 U.S. at 679).

## DISCUSSION

The automatic stay that arises when a debtor files a bankruptcy petition enjoins eight specific acts.  Pertinent to the case at hand is 11 U.S.C. § 362(a)(3) which provides:

> (a) Except as provided in subsection (b) of this section, a [filed] petition . . . operates as a stay, applicable to all entities, of –
> . . .
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

The stay of an act against property of the estate under subsection (a) continues until such property is no longer property of the estate. 11. U.S.C. § 362(c)(1).

"Although it is normally the case that once a plan is confirmed the estate ceases to exist, it is not always so. The reversion of property from the estate to the debtor upon confirmation contained in 11 U.S.C. § 1141(b) is explicitly subject to the provisions of the plan." Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 587 (9th Cir. 1993). A plan may provide for the settlement or adjustment of any claim or interest belonging to the debtor or to the estate or the retention and enforcement by the trustee or any such claim or interest. 11. U.S.C § 1123(b)(3).

In the case at hand, the plan of liquidation's confirmation hearing took place on December 17, 2009, after which an order confirming the plan was entered on December 21, 2009. The confirmation order explicitly stated that the confirmed plan resolved the objection filed by the FDIC-R. In section II, paragraph 18, the plan defines "Estate Property" as

> property of the Debtor, including Cash, securities, Estate Causes of Action (and recoveries thereon), and other real or personal property, and all property of the Estate as defined in Section 541 of the Bankruptcy Code (all of which property shall, on the Effective Date, continue to be vested in the Estate).

Included in the definition of Estate Causes of Action, in section II, paragraph 17, are "any causes of action against the FDIC (whether or not in its capacity as receiver for Cape Fear Bank), the Office of Thrift Supervision, or any other applicable regulatory authorities, for turnover of Estate Property or other wrongful acts." Finally, article IX, paragraph A states that "[e]xcept as otherwise provided in the Plan, the confirmation of the Plan vests all of the Estate Property in the Estate."

In count two of his counterclaims, the trustee alleged that the FDIC-R violated the automatic stay, which came into effect on June 23, 2009, the date of the filing of the petition, when the FDIC-R initiated the declaratory action in the district court on June 22, 2011. In support of the allegations,

5

the trustee relies on the first amended plan of liquidation filed on October 22, 2009 and the order confirming the plan entered December 21, 2009. As outlined above, the plan provided that "estate property" included "estate causes of action." Any action against the FDIC-R was defined as an "estate cause of action." Finally the plan provided that the confirmation of the plan vested all estate property in the estate. Assuming that the factual allegations are true, they plausibly give rise to the entitlement of relief under 11 U.S.C. § 362.

The FDIC-R moved to dismiss the trustee's counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming that count two, which alleged a violation of the automatic stay, failed as a matter of law because pursuant to 11 U.S.C. § 362(c)(2)(C), the automatic stay previously imposed in the debtor's bankruptcy case dissolved as of December 21, 2009, the date the confirmation order was entered. Taking the position that the stay dissolved more than one and a half years before the FDIC-R filed the action in the district court, the FDIC-R argued that it did not violate the stay and that count two should be dismissed.

To support its position that the stay dissolved upon the entry of the confirmation order, the FDIC-R relies on Teamsters Pension Trust Fund v. Malone Realty Co., 82 B.R. 346 (E.D. Pa. 1988). However, the question of what effect a confirmation order has on the automatic stay in a liquidating chapter 11 case need not be addressed because as discussed above, the trustee has alleged that under the confirmed plan, the refunds remained part of the estate. The court need not address the argument under 11 U.S.C. § 362(c)(2)(C) because the trustee has pleaded allegations that, if taken as true, plausibly give rise to an entitlement for relief under 11 U.S.C. § 362(c)(1).

Finally, the FDIC-R asserts that the trustee's failure to bring an action within six months of the effective date as designated in the plan enables it to bring the action to determine ownership of

the refunds. Although the trustee's failure to bring suit within six months of the effective date may mitigate the damages incurred from a violation of the stay, it does not change the analysis of whether the stay was in place when the FDIC-R filed the action in district court.

## **CONCLUSION**

Upon review of the trustee's counterclaims against the FDIC-R, the court finds sufficient facts to support the trustee's contention that the FDIC-R violated the automatic stay. Based on the foregoing, the FDIC-R's motion to dismiss count two of the trustee's counterclaim is **DENIED**.

**END OF DOCUMENT**